**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NORMAN JOHNSON, R10495, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **Case No. 17 CV 3997** |
| | ) | |
| DAVID GOMEZ, Warden, | ) | |
| Stateville Correctional Center, | ) | **The Honorable John F. Kness** |
| | ) | |
| Respondent. | ) | |

**PETITIONER NORMAN JOHNSON'S SUR-REPLY TO**
**RESPONDENT'S SUR-RESPONSE**

Norman Johnson ("Norman") files his Sur-reply to Respondent's Sur-response regarding his petition for habeas corpus relief. Norman exhausted all state court remedies in support of his claim of ineffective assistance of trial counsel. Norman has presented new evidence to this Court that establishes his innocence. Therefore, this Court should grant Norman's request for an evidentiary hearing.

## I.      Background

Norman is currently an inmate at Stateville Correction Center, and filed a petition for habeas corpus relief under 28 U.S.C. § 2254 challenging his 2011 murder conviction in the Circuit Court of Cook County, State of Illinois. (Doc.# 1). On January 21, 2011, a jury convicted Norman of first-degree murder. On February 9, 2011, the trial court denied Norman's motion for a new trial and sentenced him to forty-years (40) in the Illinois Department of Corrections.

Norman appealed his conviction to the First District Court of Appeals on June 28, 2011. The court affirmed the conviction on July 26, 2013. *See People v. Johnson*, 2013 IL App (1st) 11137 ¶ 1. Norman did not seek review to the Illinois Supreme Court.

On February 10, 2014, Norman filed a *pro se* post-conviction petition alleging, *inter alia*, that the trial counsel was constitutionally ineffective for failing to call Andrew Sanford, an exculpatory witness, despite opining in opening remarks that Mr. Sanford's testimony would demonstrate that he could not actually identify the shooter. Trial Tr. BB-18-19. On May 9, 2014, the trial court dismissed the petition on the basis that Norman failed to attach a supporting affidavit from Andrew Sanford.

On June 4, 2014, Norman filed a *pro se* motion to reconsider. The court denied Norman's motion to reconsider on July 8, 2014. Norman appealed the dismissal. The First District Court of Appeals affirmed. *See People v. Johnson*, 2016 IL App (1st) 142544 ¶ 1. The Illinois Supreme Court denied review. *People v. Johnson*, 65 N.E.3d 844 (Ill. 2016).

The appellate court cited Norman's failure to attach Andrew Sanford's affidavit to his appeal as the basis for its dismissal of his petition. *Id.* at ¶¶ 39-42. This defect has since been corrected. Norman filed an affidavit in this Court from Andrew Sanford which provides reliable and compelling eyewitness evidence that Norman did not shoot Jerrell Jackson. *See* Sanford Aff. ¶¶ 11, 15, & 17-18. Doc.# 9-1.

Irrespective of default, the Andrew Sanford affidavit establishes conclusively that Norman is innocent of the crime. *See* Doc.# 9 at 5; Doc.# 9-1. Further, an affidavit filed by Jason Coley, the actual shooter, recanting his prior statements to police and trial testimony buttresses the Sanford affidavit. *See* Doc.# 16-1. Finally, information provided by Margaret Faulkner contextualizing the pressure she was under from the prosecution to identify Norman as the shooter

weakens the State's case that Norman was actually present at the time of the shooting. *See* Exhibit 1, Text Messages from M. Faulkner, attached herewith.

## II.    ARGUMENT

### A.  **Norman Has Exhausted All State Remedies.**

A petitioner may advance a petition for habeas relief after he exhausts all state avenues of relief. *Spreitzer v. Schomig*, 219 F.3d 639, 640 (7th Cir. 2000) (citing *Henderson v. Thieret*, 859 F.2d 492, 496 (7th Cir. 1988)). A petitioner exhausts his state remedies after presenting all of his claims in state court prior to filing in federal court.  28 U.S.C. § 2254 (b)(1).  A "fair presentment" of a petitioner's claims occurs when state courts have "a meaningful opportunity to pass upon the substance of the claims [petitioner] later presses in federal court." *Schomig*, 219 F.3d at 645 (citing *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999)). Importantly, a petitioner's state and federal claims "need not be exact replicas of each other to satisfy the fair presentment requirement."  *Hampton v. Leibach*, 290 F. Supp. 2d 905, 917-918 (N.D. Ill. 2001) (citing *Howard v. O'sullivan*, 185 F.3d 721, 725 (7th Cir. 1999)).

On February 10, 2014, Norman presented his claims for ineffective assistance of trial counsel to the trial court. (Doc.#1 at 2-3). The petition was rejected on May 9, 2014. *Id.* On June 4, 2014, Norman requested that the court reconsider its ruling and was denied again. *Id.* at 3. Subsequently, the Illinois First District Court of Appeals affirmed the lower court's decision. *Id.* The Illinois Supreme Court denied review.  *Id.*

Norman has consistently raised the same claim at each of the state court levels, and now at this federal court level. While the state courts rejected Norman's post-conviction appeal due to a failure to attach the Andrew Sanford affidavit, the affidavit bolsters an existing claim. *See Hampton*, 290 F. Supp. 2d at 918 (where the subsequent submission of a relevant affidavit in federal court, "supplements, but does not fundamentally alter, the claim [that has been] presented

to the state courts.") (citing *Boyko v. Parke*, 259 F.3d 781, 789 (7th Cir. 2001) (internal quotations omitted)). In *Hampton*, the court in this district concluded that the "omission of [an] affidavit in state court does not mean that [petitioner's] claim was not fairly presented." *Hampton*, 290 F. Supp. 2d at 918. Norman has both exhausted his remedies at the state level and has fairly presented his claim here, and therefore this Court should permit an evidentiary hearing on the arguments presented.

## B. Alternatively, Justice Demands the Excusal of any Failure to Exhaust.

Even if this Court finds that Norman's claim was not fairly presented to the lower state courts, justice demands the excusal of the default. *See* Doc.# 40 at 2. Illinois law allows "[a] federal court [to] excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or [the petitioner] can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Cause is defined as "'an objective factor, external to the defense that impeded the defendant's efforts to raise the claim in an earlier proceeding.'" *McKee*, 589 at 382 (quoting *People v. Britt-El*, 794 N.E.2d 204, 209 (Ill. 2002)). Additionally, "[p]rejudice means, 'an error which so infected the entire trial that the resulting conviction violates due process.'" *Id.*; s*ee also* 725 ILCS 5/122-1(f).

Even if Norman's ineffective assistance of counsel claim is defaulted, he has demonstrated both "cause" and "prejudice" for the default as required by law. But for counsel's ineffectiveness, Norman would have called Andrew Sanford to testify at trial. Counsel was aware of Andrew Sanford before trial. *See* Doc.# 1 at 10. Additionally, Andrew Sanford was prepared to give powerful exculpatory testimony that Norman was not among the victim's assailants on the night

4

of the shooting. *Id*. Indeed, during her closing argument, Norman's counsel highlighted the importance of Sanford's would-be testimony – characterizing him as "a solid citizen" with "a perfect shot" to view the culprits. Trial Tr. DD-30. Norman's counsel provided no reason for his absence. *Id.*

Further, Norman's counsel failed to conduct a rudimentary investigation in support of his case for innocence. As previously stated, the Sanford and Coley Affidavits emerged as a result of Norman's own post-conviction inquiry. Moreover, Margaret Faulkner's trial testimony has been further undermined by her later equivocations. Norman's counsel, in her closing, highlighted that for Faulkner, it was "her desire, of course, to get out of county jail, [and] that the only way she could get out of the county jail was to testify here for the [S]tate." Trial Tr. DD-22-23. As discussed in detail in Norman's petition for habeas relief, these revelations are especially critical in light of the prosecution's threadbare trial evidence. Doc.# 1 at 4-9. Individually and collectively, counsel's critical investigatory and trial failures establish "cause" for any failure to exhaust his claims. Moreover, counsel's ineffectiveness violated Norman's due process rights and prejudiced his conviction.

This Court now has Andrew Sanford's Affidavit to consider among other new evidence. Thus, Norman is entitled to an evidentiary hearing, at the very least. *See Hampton*, 290 F. Supp. 2d at 920 (concluding Petitioner did not receive a "'full and fair' hearing on his failure to investigate claim" when petitioner was not able to "explore his trial counsel's reasons . . . for failing to interview and call the witnesses whose names [petitioner] had given [to his counsel]"); *see also Bruce v. United States*, 256 F.3d 592, 600 (7th Cir. 2001) (requiring trial court to conduct a hearing regarding a subsequently filed affidavit because "[t]estimony by . . . the alibi witness[]

5

presumably will enable the court to assess the adequacy of the representation . . . and to determine whether that representation was prejudicial").

As detailed here and in Norman's earlier filings in this Court, Norman's counsel failed to call Andrew Sanford (Norman's strongest defense witness), failed to fully investigate or develop his case for innocence, and failed to effectively attack the State's case. Therefore, notwithstanding any default, this Court must allow Norman's case to proceed to an evidentiary hearing.

C.     **Norman Has Sufficiently Demonstrated Actual Innocence to Excuse His Default.**

Norman's new evidence casts considerable doubt on the fairness of his conviction and sufficiently demonstrates his claim of actual innocence. Most importantly, new evidence "does not mean 'newly discovered evidence'; it just means evidence that was not presented at trial." *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016), *citing Schlup v. Delo*, 513 U.S. 298, 322 (1995). This Court's inquiry must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Jones,* 842 F.3d 454, 461, *quoting Schlup* 513 U.S. at 329. In turn, based on the new evidence, this Court must "make a probabilistic determination about what reasonable, properly-instructed jurors would do." *Schlup*, 513 U.S. at 329.

Norman's assertion of actual innocence is procedural as it is based on his claim of ineffective assistance of counsel. *See Jones*, 842 F.3d at 462. Procedural actual innocence claims are held to a less stringent standard than substantive claims. *Id.* In evaluating procedural claims, a petitioner's new evidence need only establish "sufficient doubt about [his] guilt to undermine confidence in the result of the trial without the assurance that the trial was untainted by constitutional error." *Id.* (quoting *Schlup*, 513 U.S. at 317).

Our own Circuit in *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016), sheds light on when a district court should hold that a defendant has crossed the gateway standard for a procedural actual innocence claim. In that case, Jones's attorney failed to call a critical witness that provided exonerating evidence for the defendant. *Id.* at 460. Additionally, the prosecution's witnesses were "all over the map." *Id.* at 462. The district and appellate courts both held that Jones met the threshold for an actual innocence claim, and that he had properly alleged a constitutional violation of his Sixth Amendment right to ineffective assistance of counsel. *Id.* at 467. The Court reasoned that "[a]s a general matter, a defense attorney's failure to present a material exculpatory witness of which he was aware qualifies as deficient performance." *Id.* at 464.

Norman's case bears striking similarity to *Jones*. First, as detailed in Norman's Habeas Petition, Andrew Sanford was a critical exculpatory witness, but was not called to testify at trial. At the scene of the shooting, a stray bullet pierced the window of Sanford's apartment and struck him, causing minor injuries. *See* Trial Tr. CC-85, DD-30. While neither the State, nor the defense called Andrew Sanford to testify, a police report established that he observed the shooting.[1] Further, Sanford knew Norman for many years before the shooting and would have recognized him by sight. Doc.# 9 at 1. Sanford would have also testified that none of the shooters resembled Norman, as the shooters were significantly taller than Norman. *Id*. The Sanford Affidavit explains that he saw three men approach the intended victim at the dice game. *Id*. Though he was unable to clearly see their faces, Sanford was familiar with Norman's figure and could tell that he was not part of the group. *Id.* The men who approached the dice game were approximately five feet and

---

[1] The report indicates that a Chicago police officer spoke with an individual identified as "Victim 2" who was indoors when the shooting occurred. "Victim 2" told the officer that he saw three men walk towards the dice game on St. Louis Avenue and then open fire. Seconds later, a bullet struck "Victim 2." While the report redacts the victim's name, Andrew Sanford was the only victim shot while inside his home. Hence, "Victim 2" could only be Andrew Sanford.

eleven inches tall (5'11). Norman is only five feet and six inches tall (5'6) - a considerable difference. A. Sanford Aff. ¶¶ 12-13.

Moreover, like *Jones*, the State's witnesses "were all over the map" at Norman's trial. *Jones*, 843 F.3d at 462. Again, as developed more fully in Norman's Habeas Petition, the State's case against him was rife with contradictory statements by its three main fact witnesses, Douglas Johnson, Margaret Faulkner, and Jason Coley. *See* Doc.# 1. Douglas Johnson, known as "Fresh," testified that there were three shooters, a man in a white t-shirt accompanied by two other men wearing black hoodies. Trial Tr. BB-119. Faulkner testified that there were only two "boys" wearing dark hoodies that were the shooters. Trial Tr. BB-61. Faulkner said nothing about a man in a white t-shirt or a "triangle" formation. Trial Tr. BB-93. Faulkner agreed that "if anybody is saying that there were three people out there, that would be wrong." Trial Tr. BB-93. On cross-examination, Coley admitted to a conversation with Norman's defense counsel during which he divulged that *three* other men accompanied him to the crime scene. Trial Tr. BB-199-200.

"Fresh" also testified he did not see any of the shooters' faces. Trial Tr. BB-120-21, 141. Instead, he testified that he could only identify Mr. Coley by the sound of his voice, contradicting his grand jury testimony where he testified that he was able to identify Mr. Coley by sight. Trial Tr. BB-120-21, 136, 141. Two days after the shooting, "Fresh" recalled that police detectives "showed [him] some pictures of some peoples [*sic*]." Trial Tr. BB-128. He was unable to make any positive identifications from the photographs. Trial Tr. BB-129. "Fresh" repeatedly stated that he "never" told police that Coley and Norman were the shooters. Trial Tr. BB-133-34. To the contrary, "Fresh" maintained that the officers "told [him] that" Coley and Norman were the culprits. Trial Tr. BB-134. "Fresh" described the officers' efforts to persuade him to inculpate the two men as a "script" and a "story." Trial Tr. BB-136.

8

Additionally, Margaret Faulkner admitted that she expressed concern about the lineup in a meeting with a defense investigator. Trial Tr. BB 93-94. Faulkner told the investigator that, prior to her identification of Norman in the lineup, an officer showed her a photograph of Norman and told her that he was "identified with [Coley] all the time so [the second shooter] has to be him." Trial Tr. BB 95-96. Based on those comments, Faulkner believed that the police "were trying to make [her]" identify Norman as the second shooter. Trial Tr. BB 96-97. After Faulkner picked Norman from the lineup, one officer told her, "You did good." Trial Tr. BB-97.

If this Court grants an evidentiary hearing, Norman anticipates offering text messages from Faulkner representing that the officer investigating Norman's case pushed her to identify Norman as one of the shooters. Faulkner expressed in her texts that she was under pressure from the police and said that she was pushed to pick Norman's picture out of the lineup. Faulkner said she did not know what anyone's face looked like the night of the shooting and that she felt bad picking out Norman because she did not know what she had done in selecting him. *See* attached Exhibit 1, text messages form Margaret Faulkner. Moreover, Faulkner was jailed in order to guarantee her appearance at the trial to give testimony. Trial Tr. DD-22-23.

Finally, Coley's testimony contradicted his prior statements that he had made to investigators. Trial Tr. DD-23. Coley admitted that the disclosure contradicted his prior statements and trial testimony when he claimed that only one other person – an unidentified associate of Norman's – was present. Trial Tr. BB-168, 199. Coley said that he did not initially inculpate Norman in a post-arrest interview, but did so only after the police told him that Norman was also a suspect and showed him Norman's photograph. Trial Tr. BB-177, 199. Coley stated that he knew that the police had arrested Norman and released him shortly thereafter. Trial Tr. BB-208. Coley suspected that Norman identified Coley as the shooter, resulting in Norman's quick release from

9

custody. Trial Tr. BB-208. Coley confessed that he "lied about a lot of stuff" during various police interrogations. Trial Tr. BB-178, 193.

Coley has since filed an affidavit in this case recanting much of his trial testimony and exculpating Norman. *See* Doc.# 16-1. His offer of exculpatory evidence not heard at trial is distinguished from the evidence in *Coleman v. Lemke*, 739 F.3d 342 (7th Cir. 2014). In *Coleman*, new evidence supplied by the habeas petitioner's codefendant formed the basis of the petitioner's actual innocence claim. *Id.* at 349. The codefendant attempted to take responsibility for the murder. *Id*. However, the Court rejected the petitioner's actual innocence claim due to a lack of credibility from the codefendant. *Id*. Specifically, the codefendant was unable to present a consistent account of his whereabouts on the date of the murder, he told inconsistent versions of his involvement in the murder, and his accounts did not match the physical evidence at the scene. *Id*. at 350. His credibility was further compromised by the fact that he was petitioner's friend. *Id*. at 351. For these reasons, the court rejected the habeas petition gateway claim of actual innocence to cure his procedural default. *Id*. at 355.

Here, this Court should accept Coley as a reliable witness. Coley is not Norman's friend. The two knew each other from the neighborhood. This was the extent of their relationship. Coley presents a reliable account of the murder in his affidavit. *See* Doc.# 16-1. In contrast, the prosecution failed to provide the trial court with any compelling physical evidence, besides the fact that bullet casings from two different guns were recovered at the scene, which is entirely consistent with Coley's statement of events. Though Coley identified Norman as the other shooter initially, the new evidence presented confirms that he only identified Norman because he did not want to "snitch" on his friends that accompanied him to the scene of the shooting that night. For these reasons, Norman's case is readily distinguishable from *Coleman*.

10

The *Schlup* standard is centered around one of the most important tenets in the judicial system: "It is far worse to convict an innocent man than to let a guilty man go free." *Schlup v. Delo*, 513 U.S. 298, 325 (1995) (quoting *In re Winship*, 397 U.S. 358, 372 (1970)). Norman has firmly established that it is more likely than not that no reasonable juror would have convicted Norman with the benefit of the new evidence. Therefore, Norman's actual innocence claim cures any procedural default and a hearing should be granted.

### III.     Conclusion

WHEREFORE, for the foregoing reasons, this Court should grant Norman's Habeas Corpus Petition and schedule an evidentiary hearing regarding his claims of ineffective assistance of counsel by means of failure to properly present evidence of innocence and for any other relief this court finds just.

| October 14, 2020 | **Respectfully submitted,**<br><br>**NORMAN JOHNSON**<br><br>/s/ J. Damian Ortiz<br>Attorney for Petitioner |
|---|---|
| J. Damian Ortiz, Director<br>Lindsey M. Mirabella-Grupp, Law Student<br>James C. Edwards, Law Student<br>**UIC John Marshall Law School**<br>**  Pro Bono Program & Clinic**<br>315 South Plymouth Court<br>Chicago, IL  60604<br>T:  312-427-2737 x 477<br>Email:  jdortiaz@uic.edu<br>ARDC #:6243609 |  |

11

## CERTIFICATE OF SERVICE

I certify that on October 14, 2020, I electronically filed **Petitioner's Sur-reply** with

the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division,

using the CM/ECF system, which will automatically serve notice on counsel for respondent, a

registered CM/ECF user.


*/s/ J. Damian Ortiz*
J. Damian Ortiz, Director



J. Damian Ortiz, Director
Lindsey M. Mirabella-Grupp, Law student
James C. Edwards, Law student
**UIC John Marshall Law School**
 **Pro Bono Program & Clinic**
315 South Plymouth Court
Chicago, IL  60604
T:  312-427-2737 x 477
Email:  jdortiz@uic.edu
ARDC #:  6243609